3-14-0080 People of the State of Illinois, Appalachia, by Gary Ganinovich, v. Timothy Purdle, Appalachia, by Stephen Burrell Good afternoon, Your Honors. Counsel. I'm Steve Burrell with the Office of the State Appellate Defender, 3rd District, for defendant-appellant Timothy Purdle. May it please the Court, I've raised two issues in this case. First, that Mr. Purdle was not proven guilty beyond a reasonable doubt of possession of a controlled substance. And second, that he received ineffective assistance from counsel. This is a case where cocaine was found in Mr. Purdle's girlfriend's jacket pocket in his girlfriend's apartment at a time when he was not present there, but she was. It's a case where the judge expressed serious doubts about Purdle's guilt, saying multiple times he didn't know how the cocaine got there. Three times, at least, he said, I don't know how the cocaine got there, I don't know if he put it there. He even once said, I don't know if the girlfriend was holding it for somebody else. He said, I can conclude how it got there, but only with 80% certainty. This is a case where the evidence was insufficient to prove him guilty beyond a reasonable doubt. Now, since he was not actually found in possession of the cocaine, the legal standard is constructive possession. And constructive possession exists where someone has the intent and the capability to exercise control over a contraband. Knowledge is a required element of that, but have to know, be aware that the contraband is there in order to be able to exercise that intent, capability to exercise control over it and intent to. Now, knowledge can be inferred from control of the premises in certain cases, but not if there are other facts or circumstances that tend to create a reasonable doubt. In that case, corroborating evidence is needed, associating the defendant with the contraband. And this is a case where there needs to be corroborating evidence because there are these other facts and circumstances, which is that it's found in the girlfriend's jacket. Now, there was some evidence in this case connecting the defendant to the girlfriend's apartment. If we're looking at the control of the premises issue, she testified that they had an on and off relationship and that he resided with her on and off. She said it was an on time during the time around when the contraband was found. There were items of what was characterized as men's clothing and shoes in the apartment. She testified that she paid all the bills for the apartment essentially with her money, but that she had to run errands by taking her money and giving it to creditors on certain occasions. Looking at that together, it doesn't establish that Pearl sort of had the same property rights to control the apartment as she did. It's her apartment. He's not always there. In fact, the judge found that he lived there, but it was on and off, and there were other places that he stayed. So he's not always there. It could be a stinging fact. But ultimately, even if there was a conclusion that he was living there, that's not just positive because of the situation that was found in the girlfriend's jacket. And it's just simply not reasonable to infer that even someone who's living with someone is going to know everything that's hidden inside the pockets of their jacket. And I apologize in the briefest case to Maldonado. In that case, the court looked at control of the premises and found that the evidence was insufficient to prove that the defendant was in control of the premises. But the court went on and looked at, well, even if the evidence was sufficient to show that he was in control of the premises, it said that the evidence was also not sufficient to prove that a new contraband was there where the contraband was hidden inside a statue in the apartment. So when it's not in plain view, especially in this case in someone else's jacket, it wasn't a reasonable inference that he knew that the contraband was there. So for those reasons, this court should find that he was not proven guilty beyond reasonable doubt. However, if this court were to conclude the evidence was sufficient to prove him guilty beyond reasonable doubt, this court should reverse conviction because he received an effective instance of counsel. And the state agrees that counsel's performance was deficient in this case, where counsel failed to object to certain testimony that would be an admissible hearsay if offered for the truth of the matter asserted. In this case, it appeared that the parties thought it was impeachment, but it was also improper impeachment. And the state agrees on those issues. So what essentially happened here was Ross testified that the contraband wasn't hers. She didn't know who it belonged to, and she didn't know how it got there was her testimony. And then the state came in, and they asked her, well, did you tell the police that it was Timothy Pearls? They asked her about what she told police on the day at the scene. And she denied telling them that. And she sort of went through the conversation that she had with the police and said something like, she denied telling them that. And then she said that they asked her, well, who else lives here with you? And she said, he's the only one in the apartment with me. And then the police said, well, we assume it's his. And she said, I don't know whose it is. I'm not saying it's mine or something like that. So then later on, the state called Officer Sinks and testified to what she told them at the scene. And Officer Sinks said that she had told them that it was her, the cocaine was Timothy Pearls. So this was intermissive hearsay. And for impeachment, it's improper impeachment under Illinois Rule 607, which prohibits a party from impeaching its own witness in a situation where there's no showing of affirmative damage to the case. And here, there was no showing, and the state agrees. So prejudice is the issue here. And the trial court here relied on this improper evidence in finding Pearl guilty. The trial judge simply said that Ross was conveying that the cocaine was Timothy Pearls. But there was no basis for him to reach that conclusion through any of the properly admitted evidence that counsel should not have objected to. So if counsel had objected, any evidence that would have supported that conclusion would have been excluded. And because the judge relied on this, in this close case where the judge, in fact, expressed a serious amount of doubt, there's certainly a reasonable probability that the result would have been different if counsel had performed effectively. And do your honors have any questions at this point? Do you know anything about the size of the girlfriend? I mean, the jacket wasn't free yet. Just a curious question, because I have a captive audience. Right. There wasn't anything in evidence, I don't think. No one put in evidence what her weight was, so I'm not aware of anything on record indicating her weight. But it may be noteworthy that there was a video taken of the search warrant when the police went in there. They took a video of the apartment, and they took a video of the coat. So it can be seen on that video. It's about 15 minutes long. And the coat actually says Miss London on it, so it appears to be a woman's coat. And also, she did testify that the coat was hers. I don't suppose your client is 5'2 and weighs 120 pounds? I'm not sure what my client's. Thank you for answering my question. Any additional questions? I guess not. Okay, then I'll just respectfully ask that this Court reverts the conviction because he wasn't proven guilty beyond reasonable doubt, or on the alternative, reverse the remand for further proceedings. Thank you. Thank you. And Mr. Grunewald? Okay, please. Clark, Jonathan. This is indeed a case with respect to destructive possession. First of all, to answer your question, at least according to some photographs that appear in the apartment, the defendant himself is also a larger individual. Yes. I would say easily a 3X. Okay. Not that it was his coat or anything like that, but basically. Thank you. It may not be relevant, and I'm sorry to pepper you guys with questions. Not a problem. I like the easy ones. Thank you. You know, your office has got you arguing most everything. Five down, one to go. Is this the one to go? No, this is number five. I have one right after this. With respect to the destructive possession, basically what we have is, as counsel pointed out, and I stated the law quite well, so I'm not going to go into that, but basically this is an execution of a search warrant for an apartment at North Perry. The defendant was the target of the search warrant at this apartment. And basically they found the cocaine. Yes, indeed. They found it inside a coat pocket that was a lady's jacket that belonged to Commodore Ross. But inside that bedroom, inside the bedroom, inside the closet, there was also men's clothing, 20 pairs of men's size-fitting shoes, and caps. So there was male clothing there. In addition, they found, besides a rent receipt with the defendant's name, they also found a Comcast bill addressed with his name at that address. In addition, during the course of the execution of the search, they got a call from police. I guess they must have had the place, I'm assuming, staked out. What happened is, as they were coming there, there was a call that was made that the target of the search had left. So they called and Officer Sinks stopped the vehicle. The defendant was a passenger in it. And I believe, if I'm not mistaken, I believe it was the girlfriend's car, Commodore Ross. Taken from the ignition of the car was a set of keys. On that key ring, that set of keys, was a key that went to that apartment, which the police then used to enter the apartment, whereupon they found Commodore Ross seated in there, along with her two or three children. So, when we come down to the question of his presence at the scene, his connection to the location, Judge Lyons said, the initial finding made that he had no reasonable doubts with regard to the existence of cocaine. The initial finding by the trial judge was that the defendant and his girlfriend, Commodore Ross, were living together, despite the fact that the defendant had other places to live. The trial judge said, however, this fact alone did not mean the defendant was not living there, because as evidenced by the, quote-unquote, Imelda Marcos display of men's shoes, tennis shoes, size 12. So basically, what Judge Lyons was saying is, there's enough evidence here to basically show the connection between the defendant and the apartment,  Now, the cocaine was found in a coat. It was found in a coat. A woman's coat. Correct. I mean, the argument you're making is an argument made quite frequently and accepted when it's in the cabinet in the bedroom window. You know, it's on the, you know, it's in the closet in the bedroom. But this is in a woman's coat. That is true. The thing is, I think... That becomes problematic. Well, if you're going to take and hide cocaine, and you want to take and put it someplace that would, in a sense, deflect away from you, what a better place to put it but in the girlfriend's coat. Not much different than a defendant, there's some cases out there where defendants are driving and they've got drugs, but the girlfriend is holding the drugs in the purse. It's the same thing. It's that connection. And there is enough here, especially, and I think it is significant, that he was the target of the search. So the fact that it's found in a coat as opposed to a dresser, there's obviously a joint access by a man in this room where this cocaine was found. And the law is the fact that there is nonetheless sufficient control of where the drugs are discovered, even if the location is under control of someone else at the time as well. So I think that what we have here is we have a defendant having sufficient connection to the apartment, sufficient physical control of the room, that basically the evidence circumstantially establishes or could establish with other evidence that the narcotics were his,  And that other evidence, I think, comes in because Commander Ross, she disclaimed knowledge. Now the trial judge basically found her credit. And there is a tape, and the tape does show her at the time. And the trial judge, viewing the tape, was able to draw the conclusion from that that her reaction to what was going on was reasonable. Was not something that was put on, not that she was trying to take and put this on to Mr. Purtle, but that her reaction was one expected or anticipated from someone where police are in and all of a sudden they find narcotics in a place where the person has no clue that they're there. And I think that he found that she had, as he put it, connected the dots. And so, based on the totality of the evidence, the trial judge clearly in his ruling that he actually stated on the record for us is the fact that he had no reasonable doubts who possessed the cocaine. The defendant and Ross lived together. His statement that he didn't know how the cocaine got there, I think kind of, is a little bit of an offshoot of what you were questioning about, because unless you're there, unless you actually see where it is, unless you have somebody who testifies, I saw him put it there, do we really know? But based on the totality of the evidence, based on the fact that the defendant was the target, based on the fact that Commodore Ross's reaction... I don't understand the category that the defendant was the target. So if they go someplace and somebody's the target, is it automatically, he was the target anyway, so... I'm not saying it's automatic. I'm just saying it's a piece of evidence from which you can add to other things. I certainly don't think it's automatic. Somebody obviously could be a target and obviously be innocent. I don't think it's a matter of law that this is a conclusion we draw automatically. I'm just saying it's a factor. It's a piece of the puzzle, let's say. Along with the clothing, along with everything else, along with Commodore Ross's testimony, along with the trial judge finding it credible, with all of that, the trial judge then has no worries. I do not think cocaine was the girlfriend's. She reacted appropriately. There is an appropriate crime shot. Ross connected the dots. I did not put it there. And the only other person who could have was the defendant. Because the only two people that were in that apartment were Commodore Ross and the defendant. Even though, and I am not suggesting by any stretch of the imagination here, that the defendant had any burden to prove anything. The defendant's cross-examination of Commodore Ross tried to establish that there may have been other boyfriends in here since this defendant supposedly came and gone with the wind, so to speak. But the thing is, it's justified now. There was nobody else in the apartment during this relevant time period other than the defendant. So there's nothing here that creates any kind of a reasonable doubt with respect to the trial judge's findings. What about the 80% finding? What's that? That is because of the debt. Unfortunately... It's not a fair question. But I mean it happened. He stated it. The way I look at the 80%, it's the fact that there's no direct evidence indicating that this cocaine was put in the coat by the defendant. Is 80% beyond a reasonable doubt? I thought it was unlawful in the state of Illinois to try to define reasonable doubt. It is. It's not, it's error. It's error to define it. But I just wonder is, you know, there's some cases dealing with 100%, you probably should be saying, you know, it's not 100%. Is there, is 80% or not? Is 80% beyond a reasonable doubt? I'm going to obviously have to say yes. I know. But I'm standing here and I'm being asked a question. But the thing is, I think right in context, I think all he was trying to say is, we don't really know who put it. What he's dealing with, he's dealing with a ladies coat, cocaine found in a ladies coat, in a room that had men's clothing. Yeah, I see what he says. And he only had, excuse me, and he only had two people who could have done it. Right? I see what he says, I don't know who put it in. And 80%, what's that mean? You know, about being proven guilty beyond a reasonable doubt. Where he says, I don't know who would have put it in, you know, the coat. I don't know. Is 80% sure who put it in the coat? Is 80% sure who put it in the coat? What was his exact quote about? We don't know who put it in the coat. I don't know if she held it for somebody or if she knew it was there. I assume that. But I think all of the reasonable inferences are the defendant put it there. He knew it was there, but I don't know. That's what he said. That's what he said. And then he comes up with the 80%. And like I say, to me the 80% is nothing more than, I don't have any direct evidence. Anything. I've got 80% evidence, but I'm still not going to find that he was proven guilty beyond a reasonable doubt. That's about all I can say about it. Because other than that, I have no idea what was going on in the trial judge's mind. I mean, and the reason I'm asking, I'm not trying to be unfair at all. The reason I'm asking is that there are a series of cases where the Supreme Court has declared, you know, they've always had the rule that since the 50s that you can't define it in Illinois. The U.S. Supreme Court in Nebraska has said that you can't. But normally, even though it's air, and there's a lot of cases when closing argument or other things, they said that was air to say that. Usually under the context they find it to be harmless. But nonetheless, you know, air. So now you've got, you know, the trial judge saying this stuff. And a prosecutor. Pardon me? A former prosecutor. Former state's attorney. Yeah. I don't, you know, like I said, I can't, I can only try from what the balance of, the balance of what he said. All I can try, all I can attempt to deduce from that is simply the fact that he was simply saying that we have no direct proof of who put it there. And as Your Honor read, he's doing. He also said I don't know how it got there. I can conclude how it got there. About 80% got there. But I do not know. Which is ironic, because you had a case earlier today where the judge said nothing, and it made your case more difficult. And now we have a judge who says a lot, and it's making your case more difficult. And, well, in the sense of, I don't know if irony is the correct word or not, but basically what happens is. I think it's fair to use irony. It's, it's, it's, he says that, but then yet he unequivocally finds that there's no doubt in his mind that the defendant put it there. So that's two minutes. Thank you. What is it, 20% doubt? Because that, I guess the question you should probably ask, Your Honor, is 20% doubt a reasonable doubt? The other side of the coin. The other side of the coin. That's fair. With respect to the ineffective assistance, very, very quickly. Basically, yes, improper impeachment of the witness. No doubt. Harmless error. If you just take out, if you take out, if you take out the testimony that the officer said, this is what you told me, you still have everything else left that the trial judge basically relied upon. And so the totality, the injection of this really was not error at all. He was going to take, he made that finding based on the evidence. So, so in reality, even though counsel may have been deficient on this direct one, it's not ineffective assistance because there's no prejudice. If there's any other questions, I'll be happy to try to respond. Thank you. Thank you, Mr. Neri. Mr. Verrilli, any everybody? Mostly one quick thing that I wanted to point out a little bit. There's some talk about this being sort of in a bedroom closet. And I just wanted to clarify what that looked like. If you look at the video, again, about 15 minutes, they went through the house. And you see there's a hallway and there's a door that goes into this room from the hallway. And it's sort of, it's almost like two rooms. It's split into two different sections. And this wasn't really, there's not much about some of the briefs. So it's not really, you have to watch the video. So the first section of it, there's sort of some men's and women's clothing around there. And that's where most of the shoes were. And some of them are hanging up. And then to get into the second room, you pull back this curtain and you go through this little doorway kind of thing. And when you open the curtain, then there's a coat rack. And there's several coats hanging there. So it looked like it was just, it wasn't really a closed bedroom closet. It looked like it was a place where the people who were there hung their coats maybe. So I just wanted to mostly clarify on that point. If there are no additional questions. What is your, is 20% a reasonable doubt, or is 80% beyond a reasonable doubt? I would say 20% is certainly a reasonable doubt. Anybody forcing you to say that? No, no coercion here. It's a mountain free wall. All right, well, thank you, Mr. Ray. Thank you, Alex. And thank you both for your arguments today. It was very entertaining. And we will take this matter under advisement and take back to you with a written disposition. We'll now take a short recess.